IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CURTIS D. SEAMAN,<br><br>        Plaintiff,<br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br>        Defendant. | Case No. 4:16-cv-00027-SLG |

**DECISION AND ORDER**

  Curtis Del Seaman filed an application for Disability Insurance Benefits ("disability insurance") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act") respectively,[1] alleging disability beginning March 20, 2013.[2] Mr. Seaman has exhausted his administrative remedies and seeks relief from this Court.[3] He argues that the determination by the Commissioner of the Social Security Administration ("Commissioner") that he is not disabled, within the meaning of the Act, is the product of legal error and is not supported by substantial evidence.[4] Mr. Seaman seeks a reversal of the Commissioner's decision and a finding that Mr. Seaman is disabled.[5]

---

[1] The Court uses the term "disability benefits" to include both disability insurance and SSI.

[2] Administrative Record ("A.R.") 15.

[3] Docket 1 (Seaman's Compl.) at 1.

[4] Docket 14 (Seaman's Opening Br.) at 1–10.

[5] Docket 14 at 10.

The Commissioner filed an answer to the complaint and a brief in opposition to Mr. Seaman's opening brief,[6] to which Mr. Seaman filed a reply.[7] Oral argument was not requested and was not necessary to the Court's decision. For the reasons set forth below, Mr. Seaman's request for relief at Docket 1 will be granted in part and denied in part.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[8] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[10] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[11] If the evidence is susceptible to more than one rational

---

[6] Docket 9 (Answer); Docket 23 (Opp'n).

[7] Docket 24 (Reply).

[8] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[10] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[11] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

interpretation, the ALJ's conclusion must be upheld.[12] A reviewing court may only consider "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."[13]

## II. DETERMINING DISABILITY

The Act provides for payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[14] In addition, SSI may be available to individuals who are age 65 or older, blind, or disabled, but who do not have insured status under the Act.[15] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[16]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[12] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[13] *Trevizo v. Berryhill*, 862 F.3d 987, 997 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).

[14] 42 U.S.C. § 423(a) (2012).

[15] 42 U.S.C. § 1381a (2012).

[16] 42 U.S.C. §§ 423(d)(1)(A) (2012), 1382c(a)(3)(A) (2012).

For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[17]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[18] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[19] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[20] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[21] The steps and the ALJ's findings in this case are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity." *The ALJ concluded that Mr. Seaman has not engaged in substantial gainful activity since March 20, 2013, the alleged onset date.*[22]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical

---

[17] 42 U.S.C. §§ 423(d)(2)(A) (2012), 1382c(a)(3)(B) (2012).

[18] 20 C.F.R. §§ 404.1520(a)(4) (2017), 416.920(a)(4) (2017).

[19] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[20] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[21] *Tackett*, 180 F.3d at 1099.

[22] A.R. 17.

or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement. *The ALJ determined that Mr. Seaman has the following severe impairments: "bilateral carpal tunnel syndrome, status post one-sided release; embolism in right leg status post embolectomy; diabetes mellitus; hypertension; status post total knee replacement, right; and status post left shoulder surgery."*[23]

**Step 3.** Determine whether the impairment is the equivalent of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1 that are so severe as to preclude substantial gainful activity. If the impairment is the equivalent of any of the listed impairments, and meets the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step. *The ALJ determined that Mr. Seaman does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.*[24]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[25] Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do despite his physical, mental, or other limitations.[26] *The ALJ concluded that Mr. Seaman has the residual*

---

[23] A.R. 18.

[24] A.R. 19.

[25] 20 C.F.R. §§ 404.1520(a)(4) (2017), 416.920(a)(4) (2017).

[26] 20 C.F.R. §§ 404.1520(a)(4) (2017) 416.945(a) (2017).

*functional capacity to perform less than the full range of light work except he can stand and walk for up to 4 hours and sit for up to 6 hours in an 8-hour workday; he can frequently but not constantly operate foot controls with the right lower extremity; he is limited to frequent climbing of ramps or stairs, occasional climbing of ladders ropes or scaffolds, kneeling, crouching and crawling; and he can have frequent but not constant handling and fingering with the left upper extremity.*[27]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step. *The ALJ found that Mr. Seaman is able to perform past relevant work as an architect, DOT No. 001.261-010, sedentary (SVP 7) and architect design manager, DOT No. 001.061-010, light (SVP 8).*[28]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled. *The ALJ did not address step five, because he found at step four that Mr. Seaman could perform past relevant work.*

---

[27] A.R. 20.

[28] A.R. 25.

## III. PROCEDURAL AND FACTUAL BACKGROUND

Mr. Seaman is 59 years old. He has worked as an architect for most of his adult life. His last job was as an architectural intern at Design Alaska; his work consisted of computer drafting and project management.[29] In March 2013, he was laid off from Design Alaska along with approximately 20 percent of the work force and has not worked since that time.[30]

Prior to 2011, Mr. Seaman was diagnosed with type II diabetes and benign hypertension.[31] On February 14, 2011, Mr. Seaman went to the emergency room in Fairbanks, Alaska due to severe back pain and dangerously high blood pressure.[32] A CT scan indicated he had a significant thoracoabdominal aortic dissection as a result of uncontrolled hypertension due to noncompliance with medication and tobacco use.[33] He was sent to Anchorage where he underwent vascular surgery.[34] On numerous occasions after that surgery, Mr. Seaman reported pain and coldness in his right leg and foot.[35]

---

[29] A.R. 36.

[30] A.R. 47.

[31] See A.R. 427 (identifying type II diabetes and benign hypertension as chronic problems at February 2011 doctor visit).

[32] A.R. 325.

[33] A.R. 245–46, 356.

[34] A.R. 245.

[35] A.R. 377, 380, 384, 393, 399, 403, 415, 418, 421, 424.

In May 2012, Mr. Seaman complained about his fingers and hands feeling numb.[36] His primary care provider Corrine Leistikow, M.D., noted that Mr. Seaman had decreased discrimination in his fingers and was "unable to pinch paper between his thumb and index finger."[37] She referred Mr. Seaman to a neurologist, Janice Onorato, M.D., for nerve conduction studies.[38] In June 2012, Dr. Onorato concluded that Mr. Seaman had bilateral median neuropathy at the wrists, with symptoms consistent with carpal tunnel syndrome. She opined that Mr. Seaman would benefit from carpal tunnel release surgery.[39]

On November 20, 2012, Mr. Seaman underwent rotator cuff surgery to his left shoulder and carpal tunnel decompression surgery to his left wrist.[40] Mr. Seaman underwent carpal tunnel decompression surgery on his right wrist on January 29, 2013.[41] No complications were noted with either surgery.

Mr. Seaman continued to complain of pain and coldness in his right leg. In June 2013, Dr. Leistikow referred Mr. Seaman to Dr. Onorato for an evaluation of the leg.[42] Dr. Onorato concluded that Mr. Seaman had "probable sciatic neuropathy" and had significant sensory disturbance in his right leg, but he did not appear to have "complex

---

[36] A.R. 399.

[37] A.R. 401.

[38] A.R. 401.

[39] A.R. 373.

[40] A.R. 480.

[41] A.R. 484.

[42] A.R. 378.

regional pain syndrome" or "peripheral neuropathy." The record of the visit contains no indication of any wrist or hand problems or complaints. It noted that "rapid finger-tapping was intact bilaterally." In addition, Mr. Seaman's sensation was noted to be intact to all modalities in the upper limbs; finger to nose touching was also within normal limits.[43]

In March 2014, Dr. Leistikow referred Mr. Seaman to Cathy Franciol, an occupational therapist, for a work capacity evaluation in light of his then pending Social Security application.[44] Ms. Franciol conducted numerous tests on Mr. Seaman, including tests for physical effort, pain and disability, dexterity, grip strength and handling, fitness, mobility, strength, and musculoskeletal.[45] She authored a lengthy report that summarized the results from each of the tests, and found that Mr. Seaman demonstrated "moderate to severe slowing with walking activities," that he was "unable to demonstrate balance on either leg," and that he was in the "less than one percentile for age and gender in all fine motor testing."[46] Based on these findings, Ms. Franciol opined that Mr. Seaman was "unable to return to work on a full-time or part-time basis."[47]

---

[43] A.R. 367.

[44] A.R. 451.

[45] A.R. 456–78.

[46] A.R. 452.

[47] A.R. 453.

Mr. Seaman applied for disability insurance benefits on April 16, 2013.[48] On February 28, 2014, he applied for supplemental security income.[49]

The ALJ hearing was held on October 9, 2014; Mr. Seaman was represented by counsel at that hearing.[50] The ALJ's decision was issued on January 12, 2015 and held that Mr. Seaman was not disabled from March 20, 2013 through the date of the decision.[51] The Appeals Council denied review of the ALJ's disability determination on June 9, 2016.[52] As such, the ALJ's decision is the final decision of the Social Security Administration ("SSA").[53] Mr. Seaman filed his Complaint seeking judicial review with this Court on August 5, 2016; he is represented by counsel in this appeal.[54]

## IV. DISCUSSION

Mr. Seaman asserts that the ALJ committed legal error by: (1) determining that Mr. Seaman did not meet a neurological listing pursuant to 20 C.F.R. § 404, subpt. P, app.1, section 11.00;[55] and (2) giving insufficient weight to the opinion of Ms. Franciol, an

---

[48] A.R. 15.

[49] A.R. 15.

[50] A.R. 31.

[51] A.R. 15.

[52] A.R. 1.

[53] *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

[54] Docket 1.

[55] It is not entirely clear from Mr. Seaman's briefing whether he is asserting as a distinct issue that the ALJ erred in determining that Mr. Seaman did not meeting a listing, or if the listing

occupational therapist, in determining the intensity, persistence, and limiting effects of Mr. Seaman's symptoms. The Commissioner asserts that the ALJ did not err in either of these respects and the ALJ's findings are supported by substantial evidence.[56]

1. <u>The Neurological Listing</u>

Mr. Seaman first alleges that under step 3 of the analysis, he meets listing 11.04 pursuant to 20 C.F.R. § 404, subpt. P, app.1 and is therefore disabled.[57] He appears to maintain that based on Dr. Onorato's June 2012 report (which predated Mr. Seaman's wrist surgeries), his carpal tunnel syndrome meets the requirement of a central nervous system vascular accident.[58] The Commissioner asserts that the ALJ reasonably concluded that Mr. Seaman did not meet the requirements of a listing.[59]

---

determination is being argued only in conjunction with his challenge to the ALJ's rejection of Ms. Franciol's opinion. The Court considers the listing issue separately.

[56] Docket 23 at 4.

[57] Docket 14 at 2–3. Mr. Seaman's opening brief did not assert that his right leg embolism impairment meets the definition of a listing, although he cites to Listing 11.04. The Court only addresses the point that was briefed: whether Mr. Seaman's carpal tunnel syndrome meets the listing described in 11.04 of 20 C.F.R. § 404, subpt. P, app. 1. Any other arguments as to whether Mr. Seaman has met a listing are waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e will not consider any claims that were not actually argued in appellant's opening brief."); *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999).

[58] Docket 14 at 2–3.

[59] Docket 23 at 5–6.

The ALJ held, "[r]egarding the claimant's carpal tunnel syndrome symptoms, the undersigned reviewed all of the neurological listings under 11.00 but his symptoms are not at this level."[60]

The Listing of Impairments identifies specific impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity . . . ."[61]

> To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment . . . .[62]

Mr. Seaman cites to the neurological listing under 11.04, but that listing requires a central nervous system vascular accident. There is no indication in the record that the problems that Mr. Seaman reported with his wrists and hands to Dr. Onorato in June 2012 are in any way associated with the February 2011 vascular accident. Moreover, Mr. Seaman had corrective surgery to each of his wrists after Dr. Onorato's June 2012 evaluation. Accordingly, the ALJ did not err in concluding that Mr. Seaman did not meet a neurological listing at step 3.

2. The Occupational Therapist's Opinion

Mr. Seaman alleges that the ALJ did not give proper weight to occupational therapist Cathy Franciol's report and opinions in developing Mr. Seaman's RFC and

---

[60] A.R. 20.

[61] 20 C.F.R. § 404.1525(a) (2017).

[62] *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526 (2017)) (emphasis in original).

finding that Mr. Seaman was able to perform his past relevant work as an architect.[63] The Commissioner responds that the ALJ properly evaluated all the evidence and provided a germane reason for assigning little weight to Ms. Franciol's opinion because "the limitations she opined were inconsistent with the other evidence."[64]

Under the SSA, "only licensed physicians and certain qualified specialists are considered acceptable medical sources."[65] Other health care providers, such as occupational therapists, are considered "other sources" pursuant to SSR 06-03p. Evidence from "acceptable medical sources" is generally afforded more weight than evidence from "other sources."[66] But "other sources" opinions must be considered when determining the severity of a claimant's impairments.[67] If the ALJ discounts or disregards

---

[63] Docket 14 at 1–2.

[64] Docket 23 at 7.

[65] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a) (2017)) (internal citations omitted).

[66] SSR 06-03p, *available at* 2006 WL 2329939 at *2.

[67] *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account . . .."); *see also Bruce v. Astrue*, 557 F.3d 1113, 1115–16 (9th Cir. 2009) ("The ALJ was required to consider and comment upon competent lay testimony, as it concerned how [claimant's] impairments impact his ability to work.").

"other sources" testimony, the ALJ is required to explain that determination[68] by providing "reasons germane to each witness for doing so."[69]

The entirety of the ALJ's discussion of Ms. Franciol's 30-page report is as follows:

Cathy Franciol, an occupational therapist, completed a functional capacity evaluation on March 28, 2014. The claimant demonstrated poor tolerance for sitting with increased pain. Sitting was limited to fifteen minutes, at which time the claimant required a position change. Ms. Franciol opined that standing and walking activities were better tolerated than sitting but they remained below a level that would be required for gainful employment. He had balance issues that affected his ability to stand and his walking demonstrated moderate to severe slowing. The claimant presented with fine motor and gross motor coordination. He had increased difficulty with fine manipulative skills.

Lifting was limited to 30 pounds from the floor and 35 pounds for a shoulder height maximum lift. Frequent lifting testing was up to 15 pounds and the claimant could carry 15 points. Although the claimant could lift 35 pounds, he was restricted to sedentary or below work levels because of balance and coordination issues. He walked up to 50 feet. The claimant attempted to squat but could not do so for any length of time. He was unable to perform kneeling/floor mobility due to knee pain. In conclusion, Ms. Franciol opined that the claimant was unable to return to work on a full-time or part-time basis based on the findings.

Little weight is assigned to this assessment. The limitations listed and the assessment that the claimant cannot return to work are primarily based on the claimant's subjective complaints and unsubstantiated by the record. Any limitations supported by objective testing in the record have been addressed in the above residual functional capacity. The undersigned notes that under the Social Security Administration regulations, Ms. Franciol

---

[68] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence, and therefore, *cannot* be disregarded without comment.") (internal citations omitted) (emphasis in original); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (holding that ALJ did not err in rejecting opinion of treating and examining sources when ALJ provided specific examples of why those opinions were unreasonable in light of entire medical record).

[69] *Lewis*, 236 F.3d at 511 (citing *Nguyen*, 100 F.3d at 1467).

is not considered an acceptable medical source, thus lending less weight overall to the findings.[70]

As discussed above, Ms. Franciol conducted numerous tests on Mr. Seaman, including several tests on whether Mr. Seaman was exerting maximum effort during the evaluation.[71] Although Ms. Franciol is not a medical source, her opinion that Mr. Seaman cannot return to work appears to have been derived from her extensive testing and was not primarily based on Mr. Seaman's subjective complaints. Accordingly, the ALJ's assertion to the contrary is not a germane reason for discrediting Ms. Franciol's opinion.

The ALJ also discounted Ms. Franciol's opinion based on the conclusory statement that her opinion was "unsubstantiated by the record." But the ALJ did not provide any explanation or discussion on this point, and failed to point to any portion of the overall medical record, the claimant's daily activities, and/or Mr. Seaman's work history to support or explain this conclusion.

When discounting non-medical testimony, an ALJ must provide sufficiently specific facts and germane reasons for discrediting the witness's opinions. The ALJ "must do more than offer his conclusions."[72] A conclusory statement that an opinion is not

---

[70] A.R. 24 (internal citations omitted).

[71] *See, e.g.,* A.R. 457 ("The hand dynamometer is used to present ten maximum gripping measurements, each repeated three times. Studies indicate that out of 10 coefficients of variation calculated, no more than two will exceed experimentally derived 'cut-points' if the individual is demonstrating maximum voluntary effort."). According to Ms. Franciol's tests, none of the testing on Mr. Seaman exceeded the "cut-point". A.R. 457.

[72] *Cf. Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (remanding when ALJ '"merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects"); *see also Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012) (upholding ALJ who provided

supported by the record or medical evidence does not suffice.[73]  In this case, the ALJ provided no explanation of how or why Ms. Franciol's opinions were "unsubstantiated by the record."  Given the absence of any references to the other evidence in the record that the ALJ found to be at odds with Ms. Franciol's opinions, no germane reasons for discrediting her opinions have been presented.[74]

The ALJ also stated that he was according little weight to Ms. Franciol's opinions because she is not considered an acceptable medical source.  However, an ALJ cannot disregard an "other source" opinion simply because it is not from a medical source.[75]  The ALJ is still required to consider "other source" opinions and provide one or more germane reasons for discounting the opinions.  The fact that Ms. Franciol is not an accepted medical source cannot, standing alone, constitute a germane reason for discrediting her opinions.

---

specific reasons and facts to support each reason for discounting opinion of physician assistant, an "other source" opinion).

[73] *See Popa v. Berryhill*, No. 15-16848, ___ F.3d ___, 2017 WL 3567827, at *5-6 (9th Cir. Aug. 18, 2017) (remanding when ALJ had "provided little illumination" as to how nurse practitioner's opinions conflicted with other medical evidence in record); *see also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (holding, "under our law . . . the ALJ [cannot] discredit . . . lay testimony as not supported by medical evidence in the record"); *Amirkhanov v. Colvin*, 2016 WL 1567203, at *5 (W.D. Wash. Apr. 18, 2016) (remanding when ALJ's rejection of "other source" opinion was "not sufficiently specific"); *McCann v. Colvin*, 111 F.Supp.3d 1166, 1175 (W.D. Wash. 2015) (remanding after finding ALJ failed to provide specific, germane reasons for discounting a nurse practitioner's opinion, when ALJ provided no explanation for finding the opinion inconsistent with overall medical record, claimant's daily activities, and work history).

[74] *See Nguyen*, 100 F.3d at 1467 (remanding when ALJ failed to provide specific reasons for discounting lay witness testimony); *see also Bruce*, 557 F.3d at 1115 ("[Lay] testimony is competent evidence and cannot be disregarded without comment.") (internal citations omitted).

For the above stated reasons, the Court finds that the ALJ erred by failing to provide specific, germane reasons supported by substantial evidence for giving little weight to Ms. Franciol's opinions. As Ms. Franciol found Mr. Seaman was more severely limited than the limitations contained in the RFC, the ultimate disability decision may have changed if her opinion was given great weight.[76] Therefore, the error is not harmless and requires remand.

3. The Scope on Remand

A reviewing court may remand a disability benefits case to the ALJ for further administrative proceedings and "retain[s] 'flexibility' in determining the appropriate remedy."[77] A remand for further proceedings is proper when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."[78]

The Court's evaluation of the record as a whole does create doubt as to whether Mr. Seaman is in fact disabled.[79] But the ALJ committed legal error when he failed to set

---

[76] *See Molina*, 674 F.3d at 1115-17; *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("[T]he ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony.").

[77] *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (citing *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("The ordinary remand rule applies equally to Social Security Cases. While we generally remand to the agency for additional investigation or explanation, Congress has granted courts some additional flexibility in § 405(g) to reverse or modify an administrative decision without remanding the case for further proceedings.") (internal quotations and citations omitted).

[78] *Garrison*, 759 F.3d at 1021.

[79] For example, Ms. Franciol concluded that Mr. Seaman fell in the lowest one percentile for all fine motor testing, yet in Mr. Seaman's Activities of Daily Living Report, he states he uses his computer often, which suggests his fine motor skills could not fall in the bottom one percentile. *Compare* A.R. 452 ("[Mr. Seaman] scored in less than 1 percentile for age and gender in all fine motor testing."), *with* A.R. 194–95 (Mr. Seaman stating he uses the computer often for on-line

forth germane reasons for rejecting Ms. Franciol's opinions regarding Mr. Seaman's functional capacity to work. Accordingly, a remand for further proceedings is warranted.[80]

## V.  ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error with respect to the consideration of Ms. Franciol's opinion. Accordingly, IT IS ORDERED that Plaintiff's Motion for Remand at Docket 1 is **GRANTED IN PART** as set forth herein, the Commissioner's final decision is **VACATED**, and the case is **REMANDED** to the SSA for further proceedings consistent with this decision. The Clerk of Court is directed to enter a final judgment in accordance with this order.

DATED this 5th day of September, 2017 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

shopping and emailing friends). Further, Ms. Franciol's opinion is at odds with Dr. Onorato's 2013 observations. *Compare* A.R. 452 (finding Mr. Seaman demonstrated "[d]ecreased bilateral coordination for fine motor tasks" and was "[u]nable to balance on either leg . . ."), *with* A.R. 367 (finding Mr. Seaman's "[r]apid finger-tapping intact bilaterally" and "[h]e is steady on his feet").

[80] *See Trevizo v. Berryhill*, 862 F.3d 987, 999 n.4 (9th Cir. 2017) ("[W]e rely only on the ALJ's stated bases for rejecting Trevizo's disability claims. Because the ALJ did not provide these explanations herself as a reason to reject Dr. Galhotra's opinion, the district court erred in looking to the remainder of the record to support the ALJ's decision, and we cannot affirm on those grounds.") (internal citations omitted).